UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHANCELLOR WADE,<br>　　　　　Plaintiff,<br>　　v.<br>CA DEPT. OF CORRECTIONS AND REHABILITATION, et al.,<br>　　　　　Defendants. | Case No. 17-cv-00042-PJH<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br>Re: Dkt. No. 36 |

This is a civil rights case brought pro se by a former state prisoner under 42 U.S.C. § 1983. His claims arise from his detention at Correctional Training Facility ("CTF"). Plaintiff, an adherent to the Nation of Islam ("NOI"), alleges that defendants interfered with his ability to practice his religion in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the free exercise clause of the First Amendment, the equal protection clause of the Fourteenth Amendment and related state laws. Specifically he argues that defendants failed to show NOI videos to the entire prison and failed to provide a NOI chaplain. He seeks money damages and injunctive relief. Defendants filed a motion for summary judgment. Plaintiff filed an opposition and defendants filed a reply. For the reasons set forth below, the motion for summary judgment is granted.

## MOTION FOR SUMMARY JUDGMENT

### Legal Standards

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may

affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. *Id.* If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.*

Section 3 of RLUIPA provides: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 [which includes state prisons, state psychiatric hospitals, and local jails], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). The statute applies "in any case" in which "the substantial burden is imposed in a program or activity that receives Federal financial assistance." 42 U.S.C. § 2000cc-1(b)(1). RLUIPA also includes an express private cause of action that is taken from RFRA: "A person may assert a violation of [RLUIPA] as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a); cf. § 2000bb-1(c). For purposes of this provision, "government" includes, inter alia, states, counties, municipalities, their instrumentalities and officers, and "any other person acting under color of state law." 42 U.S.C. § 2000cc-5(4)(A).

In order to establish a free exercise violation, a prisoner must show a defendant burdened the practice of his religion without any justification reasonably related to

legitimate penological interests. *See Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008). A prisoner is not required to objectively show that a central tenet of his faith is burdened by a prison regulation to raise a viable claim under the Free Exercise Clause. *Id.* at 884-85. Rather, the test of whether the prisoner's belief is "sincerely held" and "rooted in religious belief" determines the Free Exercise Clause inquiry. *Id.* (finding district court impermissibly focused on whether consuming halal meat is required of Muslims as a central tenet of Islam, rather than on whether plaintiff sincerely believed eating kosher meat is consistent with his faith). The prisoner must show that the religious practice at issue satisfies two criteria: (1) the proffered belief must be sincerely held and (2) the claim must be rooted in religious belief, not in purely secular philosophical concerns. *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994) (cited with approval in *Shakur*, 514 F.3d at 884).

A prison regulation that impinges on an inmate's First Amendment rights is valid if it is reasonably related to legitimate penological interests. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *see, e.g., Walker v. Beard*, 789 F.3d 1125, 1135-37 (9th Cir. 2015) (prison's classification of a white racist inmate as eligible to be housed with a person of a different race and its refusal to grant him an exemption did not violate Aryan Christian Odinist inmate's religious rights under the Free Exercise Clause because prison's policy was reasonably related to the penological interest in avoiding the legal liability of equal protection suits brought by other inmates). Security interests may require prisons to restrict attendance at religious services, but the inmates must be provided with an alternative means of meeting the need for those services. *See McCabe v. Arave*, 827 F.2d 634, 637 (9th Cir. 1987) (protective custody inmate can be denied permission to attend service of a particular denomination if he is permitted to attend interdenominational service).

The Equal Protection Clause requires that an inmate who is an adherent of a minority religion be afforded a "reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts,"

3

*Cruz v. Beto*, 405 U.S. 319, 322 (1972) (Buddhist prisoners must be given opportunity to pursue faith comparable to that given Christian prisoners), as long as the inmate's religious needs are balanced against the reasonable penological goals of the prison, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987). *Allen v. Toombs*, 827 F.2d 563, 568-69 (9th Cir. 1987). The court must consider whether "the difference between the defendants' treatment of [the inmate] and their treatment of [other] inmates is 'reasonably related to legitimate penological interests.'" *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008) (citation omitted) (finding district court erroneously applied rational basis review to plaintiff's claim that defendants violated equal protection clause by providing only Jewish inmates with kosher meat diet and remanding claim so record could be more fully developed regarding defendants' asserted penological interests).

An inmate "'must set forth specific facts showing a genuine issue' as to whether he was afforded a reasonable opportunity to pursue his faith as compared to prisoners of other faiths" and that "officials intentionally acted in a discriminatory manner." *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997), *abrogated on other grounds by Shakur*, 514 F.3d at 884-85. *See, e.g., Hartman v. California Dep't of Corrections*, 707 F.3d 1114, 1124 (9th Cir. 2013) (affirming dismissal of equal protection claim based on denial of request for a paid Wiccan chaplain where pleadings suggested a reasoned and vetted denial – paid Wiccan chaplain not necessary because a volunteer Wiccan chaplain provides services at prison and staff chaplains are available to provide inmates with religious assistance – rather than discriminatory intent).

Although prisoners are entitled to equal protection, it does not follow that a prison must duplicate every religious benefit it provides so that all religions are treated exactly the same. As the Supreme Court explained in *Cruz*:

> We do not suggest . . . that every religious sect or group within a prison--however few in number--must have identical facilities or personnel. A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand. But reasonable opportunities must be afforded to all prisoners to exercise the religious

4

1                      freedom guaranteed by the First and Fourteenth Amendments without fear of penalty.

2    405 U.S. at 322 n.2.

**Facts**

A review of the records indicates that the following facts are undisputed unless otherwise noted:[1]

During the relevant time, plaintiff was incarcerated at CTF. Complaint ("Compl.") at 4. Plaintiff is an adherent of the NOI and occasionally attended Islamic services at CTF. Compl. at 5; Motion for Summary Judgment ("MSJ") Aquil Decl. ¶ 12. Plaintiff requested that videos from the NOI be broadcast on the CTF system wide television and that a NOI chaplain be provided. Compl. at 6-11.

These requests were denied because defendants felt that the NOI had been found to promote racist and anti-Semitic views that violate prison non-discriminatory policy and cannot be publicly endorsed by CTF. Aquil Decl. ¶¶ 4, 9-11,15, 20. Plaintiff denies that the NOI has racist and anti-Semitic beliefs, because it is a "matter of perception". Opposition at 3. Plaintiff states that, "[t]he proponents of this perception primarily come from those whom injustices, immoral behavior, and atrocities are exposed by the truths that come from [the NOI]. . . ." *Id.*

Defendants determined that plaintiff's requests would be for institutional educational equipment to be used for religious purposes. Aquil Decl. at ¶ 18; Urquidez Decl. ¶ 7. Plaintiff was informed that the prison received federal funding to purchase educational equipment and pursuant to the Federal Education Act, the equipment cannot be used for religious purposes such as broadcasting television programs within the prison. Compl. Ex. 1B. The reasons that other religions could broadcast on prison television channels were because outside organizations, not the prison, covered the costs for the programming, equipment and installation. *Id.* Several Christian

---

[1] Plaintiff is no longer incarcerated and was provided six months to file an opposition. Plaintiff stated in his opposition that he would submit a statement of disputed facts, but no such filing was provided. The court has still reviewed plaintiff's opposition to determine what facts are undisputed.

5

organizations had provided funding for these endeavors and the Muslim Chaplain, defendant Chaplain Aquil, was able to broadcast programming because he had acquired funding. *Id.* Plaintiff was informed that if he was aware of an organization that could provide funding for the programming and equipment, they should contact the prison. *Id.*

Chaplain Aquil first became Muslim in 1962. Aquil Decl. at ¶ 3. He began studying the NOI in 1974 and served as a NOI acting minister for Temple 27-C in Watts, California. *Id.* In 1974 and 1975 he was assigned as a minister for the NOI in Seattle, Albuquerque and Shreveport. *Id.*

Chaplain Aquil encouraged plaintiff and other NOI members to join the common Muslim services that were already in place. Aquil Decl. ¶¶ 3-4, 6, 12, 15, 22-25. The Islamic Program at CTF was tailored to be inclusive for all Islamic sects by emphasizing values that all Muslims share. *Id.* at ¶¶ 12, 15, 16, 23-25. Plaintiff occasionally attended Jumu'ah services provided by Chaplain Aquil. *Id.* at ¶ 12. Chaplain Aquil also sought out appropriate NOI written materials for plaintiff, helped plaintiff formally request a television channel and inquired about if plaintiff could serve as a NOI chaplain. *Id.* at ¶¶ 13, 14, 19, 21, 22.

The chaplain's office at CTF had several NOI VHS videotapes and there was a video player in the chapel. *Id.* at ¶ 14. Chaplain Aquil reviewed the videos, and removed certain videos that contained inappropriate racist, anti-Semitic or homophobic content. *Id.* Once a month and then twice a month, Chaplain Aquil invited NOI inmates to the chapel to view the videos and plaintiff occasionally watched the videos. *Id.*

Plaintiff was also allowed to privately congregate for NOI services on the prison yard or housing unit, engage in written correspondence with a NOI chaplain and purchase authorized religious items. *Id.* at ¶ 21. Chaplain Aquil also contacted a NOI minister for suggestions. *Id.* Plaintiff and Chaplain Aquil were unable to come to an agreement for plaintiff to be provided time to use the chapel. *Id.* at ¶ 20; Opposition at 12-13.

The NOI members were not the only religious group that did not have access to their own chaplain or broadcast video presentations. Urquidez Decl. ¶ 11. Wiccans

6

relied on the Native American chaplain and Jehovah's Witnesses relied on the Protestant chaplain. *Id.* Chaplain Aquil did not make hiring decision regarding chaplains. Aquil Decl. ¶¶ 22-23.

Plaintiff and Chaplain Aquil have differing views on various aspects of the religion and NOI teachings. Opposition at 7-8. Plaintiff is no longer at CTF and was paroled. Docket Nos. 17, 21.

**ANALYSIS**

**Injunctive Relief**

Plaintiff seeks injunctive relief, namely that the NOI videos are broadcast to the entire prison on the CTF television system and a NOI chaplain be provided. However, it is undisputed that plaintiff has been released from prison and is no longer at CTF. When an inmate is released from prison and there is no reasonable expectation or demonstrated probability that he will again be subjected to the prison conditions from which he seeks injunctive relief, the claims for injunctive relief should be dismissed as moot. *Dilley v. Gunn*, 64 F.3d 1365, 1368-69 (9th Cir. 1995); *see also Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012) (same for claims for declaratory relief). A claim that an inmate who has been transferred and might be retransferred to the facility where the injury occurred is too speculative to overcome mootness. *See Dilley*, 64 F.3d at 1369; *Wiggins v. Rushen*, 760 F.2d 1009, 1010-11 (9th Cir. 1985). The fact that other inmates will continue to be subject to the allegedly improper policies also does not overcome mootness because those inmates can bring their own cases. *Alvarez*, 667 F.3d at 1065. In this case, plaintiff is no longer in custody and there is no reasonable expectation that he will again be in custody, or even if he were to be again custody, that he will be incarcerated at CTF. Plaintiff's claims for injunctive relief are denied.[2]

---

[2] To the extent plaintiff seeks relief for a separate claim regarding religious service time in the chapel, that claim is not part of this action. Regardless, he only sought injunctive relief and those claims are denied.

7

**RLUIPA**

Nor can plaintiff obtain money damages pursuant to RLUIPA. RLUIPA does not authorize suits against state actors (including prison officials) acting in their individual capacity. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (agreeing with other circuits addressing this issue). Claims may only be brought against such defendants in their official or governmental capacity. *Id.* at 904.

Yet, the availability of money damages from state officials sued in their official capacity turns on whether the State has waived its Eleventh Amendment immunity from such suits or congress has abrogated that immunity under its power to enforce the Fourteenth Amendment. *Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1112 (9th Cir. 2010). Although a state may choose to waive its Eleventh Amendment sovereign immunity, its consent to suit "must be 'unequivocally expressed' in the text of the relevant statute" and may not be implied. *Sossamon v. Texas*, 563 U.S. 277, 284 (2011) (*quoting Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 99 (1984)). RLUIPA's provision that a person asserting a violation may obtain "appropriate relief," 42 U.S.C. § 2000cc-2a, does not unambiguously impose a waiver of sovereign immunity from claims for damages as a condition of receipt of federal funds, so a state's receipt of such funds is not a waiver. *Sossamon*, 563 U.S. 277 at 293 (holding that "States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA because no statute expressly and unequivocally includes such a waiver"). And the provision of the Rehabilitation Act saying that states are not immune under the Eleventh Amendment from suits asserting violations of enumerated anti-discrimination statutes or "any other Federal statute prohibiting discrimination . . ." , 42 U.S.C. § 2000d-7, does not make a state's acceptance of federal funds a waiver of immunity for RLUIPA claims, because RLUIPA is not a "statute prohibiting discrimination." *Holley*, 599 F.3d at 1113-14. Consequently, RLUIPA does not authorize money damages against state officials, whether sued in their official or individual capacities. *See Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015).

8

**Free Exercise**

For purposes of this motion, the court finds that plaintiff's beliefs are sincerely held and rooted in religious belief. Defendants first argue that they did not burden the practice of plaintiff's religion. With respect to the video presentation, it is undisputed that plaintiff and other NOI inmates were able to watch NOI videos in the chapel. It is undisputed that plaintiff watched videos in the chapel. Plaintiff argues that the videos were not broadcast to the entire prison. Plaintiff fails to articulate why other prisoners who are not part of his faith must be allowed to watch the videos. Defendants did not burden the practice of plaintiff's religion with respect to the videos and are entitled to summary judgment on this claim.

Defendants are also entitled to summary judgment on the claim that they failed to provide a NOI chaplain. The First Amendment does not require prison to provide inmates with the chaplain of their choice. *Hartman v. Cal. Dep't. of Corr. and Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (*citing Cruz*, 405 U.S. at 322, n.2); *Johnson v. Moore*, 948 F.2d 517, 520 (9th Cir. 1991) (failure to provide Unitarian Universalist chaplain did not violate free-exercise clause where inmate had "reasonable opportunity" to exercise his faith). Plaintiff has not shown that he was prohibited from exercising his faith and the Muslim chaplain provided many opportunities to plaintiff and other NOI inmates to pursue their religious beliefs.

Even assuming that defendants impinged on plaintiff's First Amendment rights, they argue that the denial of plaintiff's requests was reasonably related to legitimate penological interests. Defendants presented arguments and evidence with respect to the factors set forth in *Turner*. Plaintiff failed to address the *Turner* factors.

Allegations of a denial of an opportunity to practice religion "must be found reasonable in light of four factors: (1) whether there is a 'valid, rational connection' between the regulation and a legitimate government interest put forward to justify it; (2) 'whether there are alternative means of exercising the right that remain open to prison inmates'; (3) whether accommodation of the asserted constitutional right would have a

9

1 significant impact on guards and other inmates; and (4) whether ready alternatives are
2 absent (bearing on the reasonableness of the regulation)." *Pierce v. County of Orange*,
3 526 F.3d 1190, 1209 (9th Cir. 2008) (*citing Turner*, 482 U.S. at 89-90); *see Beard v.*
4 *Banks*, 548 U.S. 521, 532-33 (2006) (noting that application of the *Turner* factors does
5 not turn on balancing the factors, but on determining whether the defendants show a
6 reasonable relation, as opposed to merely a logical relation).

Defendants argue that there was a valid, rational connection between the denials of plaintiff's requests and the legitimate government interest to justify the denials. While the parties dispute if the NOI presents racist, homophobic and anti-Semitic beliefs, defendants have a legitimate interest in following policies of inclusion and anti-discrimination. Even if it were found that the NOI did not present discriminatory beliefs, defendants had a legitimate government interest in denying plaintiff's use of the Educational Department Equipment for religious purposes. It is undisputed that the Federal Education Act prevents use of federal education funds for religious worship or instruction. It was reasonable for defendants to deny the requests as to not violate federal law. *See*, *e.g.*, *Walker v. Beard*, 789 F.3d 1125, 1135-37 (9th Cir. 2015) (prison's classification of a white racist inmate as eligible to be housed with a person of a different race and its refusal to grant him an exemption did not violate Aryan Christian Odinist inmate's religious rights under the Free Exercise Clause because prison's policy was reasonably related to the penological interest in avoiding the legal liability of equal protection suits brought by other inmates).

With respect to the second factor, plaintiff had an alternative means to exercise his right. Plaintiff and other NOI inmates were able to watch the videos in the chapel and the Muslim chaplain actively sought out way to include the NOI inmates and incorporate their beliefs. It is undisputed that plaintiff occasionally attended services. Defendants have also met their burden with respect to the third factor. If plaintiff's requests were accommodated, there would be a significant impact on guards and inmates. The safety of guards and other inmates would be at issue; if the prison authorized and provided

10

funds for a religion and teachings that many consider being prejudiced against others. If the prison paid for a chaplain for the NOI, then the prison would need to pay for chaplains for other religions. Finally, the prison cannot use educational equipment funds for religious purposes, or they would be in violation of federal law.

Defendants have also shown they are entitled to summary judgment with respect to the fourth factor. There are ready alternatives already in place, as discussed above. Plaintiff could view the videos and there were many ways for him to practice his religion. For all these reasons, summary judgment is granted on this claim.

**Equal Protection**

For the same reasons set forth above, summary judgment is granted to defendants on equal protection claim. Plaintiff has not set forth specific facts showing a genuine issue as to whether he was denied a reasonable opportunity to pursue his faith compared to other prisoners. Nor has he shown that defendants intentionally acted in a discriminatory manner. Plaintiff was provided many ways in which to pursue his faith through the various services and options provided by the Muslim chaplain and other prisoner administrators. Defendants are not liable because other religious faiths acquired outside funding to provide other services. The prison need not duplicate every religious benefit that other religions are provided. *See Cruz* at 322 n.2. Moreover, there were various other groups that did not have their own broadcast television channel or own chaplain. Wiccans relied on the Native American chaplain and Jehovah's Witnesses relied on the Protestant chaplain. Summary judgment is granted for this this claim.

**Qualified Immunity**

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The rule of "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Defendants can

11

have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. *Id.* at 205. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determining a deprivation first and then deciding whether such right was clearly established, as required by *Saucier*). The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *Pearson*, 555 U.S. at 236.

The court has not found a constitutional violation, and, even if there was a violation, defendants would be entitled to qualified immunity. It would not be clear to reasonable officials in these positions that denying plaintiff the ability to televise to the entire prison the NOI videos; while plaintiff and other inmates had the ability to watch them in the chapel, would have violated the law. Nor would it be clear that denying a NOI chaplain would violate the law when there was a Muslim chaplain available who offered various services and opportunities for NOI inmates and not every religious faith is entitled to the chaplain of their choice. Defendants are entitled to qualified immunity.

**State Law Claims**

Under the California Tort Claims Act ("CTCA"), set forth in California Government Code sections 810 et seq., a plaintiff may not bring a suit for monetary damages against a public employee or entity unless the plaintiff first presented the claim to the California Victim Compensation and Government Claims Board ("VCGCB" or "Board"), and the Board acted on the claim, or the time for doing so expired. "The Tort Claims Act requires that any civil complaint for money or damages first be presented to and rejected by the pertinent public entity." *Munoz v. California*, 33 Cal. App. 4th 1767, 1776 (1995). The purpose of this requirement is "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense

12

of litigation." *City of San Jose v. Superior Court*, 12 Cal. 3d 447, 455 (1974) (citations omitted). Compliance with this "claim presentation requirement" constitutes an element of a cause of action for damages against a public entity or official. *State v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1244 (2004). Under California Government Code § 910, plaintiff is required to show, inter alia, the date, place, and other circumstances of the occurrence or transaction which gave rise to the claim; a general description of the injury, damage or loss, and the names of the public employees causing the injury. *Id.*

Federal courts require compliance with the CTCA for pendant state law claims that seek damages against state public employees or entities. *Willis v. Reddin*, 418 F.2d 702, 704 (9th Cir. 1969); *Mangold v. California Public Utilities Commission*, 67 F.3d 1470, 1477 (9th Cir.1995). State tort claims included in a federal action, filed pursuant to 42 U.S.C. § 1983, may proceed only if the claims were first presented to the state in compliance with the claim presentation requirement. *Karim–Panahi v. Los Angeles Police Department*, 839 F.2d 621, 627 (9th Cir.1988).

Defendants argue that plaintiff failed to comply with the claim presentation requirement of the CTCA. Specifically, they argue that plaintiff failed to state, "the name or names of the public employee or employees causing the injury, damage, or loss, if known. Cal. Gov't Code § 910(e); *Loehr v. Ventura County Community College District*, 147 Cal. App. 3d 1071, 1082-83 (Cal. Ct. App. 1983). A review of the plaintiff's CTCA form supports defendants' argument. MSJ, Request for Judicial Notice, Ex. B at 5-12. On the form itself, plaintiff did not provide any information or identify any defendants. *Id.* at 5-8. Instead, plaintiff attached a one page exhibit that stated that prison officials failed to provide NOI members with reasonable accommodations because those officials refused to schedule NOI time in the chapel or to hold religious services. *Id.* at 12. Plaintiff also stated that only Muslim chaplains are hired, not NOI Muslim chaplains. *Id.*

Plaintiff does not dispute that he failed to identify any defendants on the form or on the attachment. Plaintiff failed to put the state employees on notice of the claims he intended to bring in a civil complaint. "[T]he factual circumstances set forth in the written

13

1 claim must correspond with the facts alleged in the complaint; even if the claim were timely, the complaint is vulnerable to a demurrer if it alleges a factual basis for recovery which is not fairly reflected in the written claim." *Nelson v. State of California*, 139 Cal. App. 3d 72, 79 (Cal. Ct. App. 1982).

Because it is undisputed that plaintiff failed to properly comply with the CTCA, his state law claims must be dismissed. Failure to file a proper claim against defendants is fatal to his civil complaint. *See Dilts v. Cantua Elementary School Dist.*, 189 Cal. App. 3d 27, 37 (Cal. Ct. App. 1987) (finding non-compliance with the Government Claims Act when plaintiff, among other failures, did not include in his claim the name or names of public employees causing his alleged injury); *Loehr*, 147 Cal. App. 3d at 1082-84 (finding non-compliance when plaintiff, among other failures, did not refer in his claim to two defendants named in his complaint). A failure to identify the defendants in an administrative claim is fatal to a cause of action under this Act. *Rivera v. City of Merced*, 2006 WL 3349576, at *4 (E.D.Cal.2006) (*citing State v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1239 (2004). Plaintiff has the burden of showing either "satisfaction of the statutory prerequisites or sufficient facts to justify noncompliance on the ground of excuse, waiver, or estoppel." *Rivera*, 2006 WL 3349576 at *4 (*citing Bodde*, 32 Cal.4th at 1239). Plaintiff has not met this burden in this case and in his opposition he did not address the failure to identify the defendants.

Furthermore, the majority of the defendants in this case were not known to plaintiff when he submitted his claim to the Board. Plaintiff submitted his claim on June 17, 2016. MSJ, Request for Judicial Notice, Ex. B at 6. At that time, the only defendant known to plaintiff was Chaplain Aquil, but plaintiff did not identify him in the claim. In the federal complaint, plaintiff alleged that the other defendants became aware of the violation of his rights through his inmate appeals. Compl. at 17. Plaintiff's second level appeal and third level appeal, which involved the other named defendants, were not issued until June 29, 2016, and October 18, 2016, respectively. Compl. Exs. 2A, 2B. These defendants had not been involved with plaintiff's claims when he submitted the claim to the Board. For all

14

these reasons, summary judgment is granted for defendants with respect to the state law claims.

**CONCLUSION**

1. For the reasons set forth above, the motion for summary judgment (Docket No. 36) is **GRANTED**.[3]

2. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: July 3, 2018

_____
PHYLLIS J. HAMILTON
United States District Judge

---

[3] Because the court has granted summary judgment on the merits, the exhaustion argument will not be addressed. Nor will the court address that certain defendants did not personally participated in the alleged violations or the availability of punitive damages. Plaintiff did not set forth an Establishment clause claim in this case, thus the issue will not be addressed.

15

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHANCELLOR WADE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CA DEPT. OF CORRECTIONS AND REHABILITATION, et al.,<br><br>　　　　　Defendants. | Case No. 17-cv-00042-PJH<br><br>**CERTIFICATE OF SERVICE** |

　　　I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

　　　That on 7/3/2018, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

　　　Chancellor Wade ID: P-25499
　　　7740 Watt Ave., #133
　　　Antelope, CA 95843

Dated: 7/3/2018

　　　　　　　　　　　　　　　　　　Susan Y. Soong
　　　　　　　　　　　　　　　　　　Clerk, United States District Court

　　　　　　　　　　　　　　　　　　By: *Kelly Collins*
　　　　　　　　　　　　　　　　　　Kelly Collins, Deputy Clerk to the
　　　　　　　　　　　　　　　　　　Honorable PHYLLIS J. HAMILTON